

**SIGNED this 15th day of July, 2008.**

_____
**FRANK R. MONROE
UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | X | |
| RAMBO IMAGING, L.L.P. | X | CASE NO. 07-11190-FRM |
| | X | |
| Alleged Debtor | X | CHAPTER 7 (Involuntary) |

MEMORANDUM OPINION

On May 6, 2008, the Court heard Rambo Imaging, L.L.P.'s Objection to the Amended Involuntary Petition and Motion to Strike and Dismiss the Amended Petition. After the hearing, the Court, on the record, recognized the following issues: 1) whether Dr. Scott Spann ("Spann") is a general or a limited partner of the alleged debtor; 2) if Spann is a general partner, whether certain inconsistent findings, statements and/or positions in other litigation preclude him from asserting the same due to estoppel; 3) if Spann is a general partner, whether he has the right to join an involuntary proceeding brought by a creditor under §303(b)(3) pursuant to the joinder rules set out in §303(c); and 4) whether Spann must file a pleading requesting intervention under Bankr. Rule 7015 which

1

requires certain types of amendments be made only upon leave of court. The Court stated it would treat the Motion to Strike and Dismiss the Amended Petition as a summary judgment motion and requested that the pleadings in the state court litigation germane to the state court's finding that Spann was a limited partner be provided to the Court as the Court noted "that the defendants may have made judicial admissions in that case that they were limited partners." The Court gave the parties twenty (20) days to provide the requested documents and brief the issue. The Court stated at the hearing that it would limit its initial ruling to whether Spann is a limited or a general partner (including the issue of estoppel) for purposes of §303 and rule on the other issues when necessary.

This is a matter which arises under Title 11 and in a case under Title 11. It is therefore, a core proceeding under 28 U.S.C. §157(b)(2). This Court has the jurisdiction to enter a final order under 28 U.S.C. §1334(a) and (b), 28 U.S.C. §157(a) and (b)(1), 28 U.S.C. §151, and the Standing Order of Reference of the United States District Court for the Western District of Texas referring all bankruptcy matters to the Bankruptcy Court.

## Background

Strasburger & Price filed this involuntary case on July 2, 2007. The alleged debtor filed an answer to the involuntary on September 6, 2007. The alleged debtor then filed a Motion for Summary Judgment on February 19, 2008 claiming that Strasburger & Price's claim was the subject of a bonafide dispute. The Court held a hearing on this Motion for Summary Judgment on March 26, 2008. That same day an Amended Involuntary Petition was filed in which Spann joined as a petitioner under §303(b)(3) alleging standing as a general partner. The Court granted the Motion for Summary Judgment and dismissed Strasburger & Price as a petitioning creditor. Strasburger & Price has filed a Motion for Reconsideration of this Order which is currently pending.

Findings of Fact

1) Spann's Inconsistent Postions

Rambo Imaging, L.L.P. ("Rambo") filed a voluntary Chapter 11 bankruptcy proceeding in January, 2007 under Case No. 07-10041. In that case, Spann took the position Rambo did not belong in bankruptcy. Spann argued that Rambo filed the Chapter 11 Petition in an attempt to "forum shop." According to Spann:

> "This is a partnership dispute that does not belong in bankruptcy. The filing of this case was plainly an illicit attempt to forum shop and was used to attempt to circumvent another unfavorable ruling against Nichols and Rambo in the Arbitration Proceeding. In such instances, dismissal is warranted."

*Spann's Motion to Dismiss* filed in Cause No. 07-10041-FRM (Docket No. 66) at ¶30. At the hearing on *Spann's Motion to Dismiss* held June 4, 2007, Spann argued that the case was nothing more than an ordinary "partnership dispute," and that bankruptcy relief was both unnecessary and unjustified. *Transcript*, *Hearing on Spann's Motion to Dismiss* in Cause No. 07-10041-FRM (Docket No. 102) at page 13, lines 10-13 and at page 14, lines 1-15.

Rambo also filed an adversary proceeding against Spann in that case. Spann argued that the parties' disputes should be resolved in arbitration–not in bankruptcy court. *Spann's Motion Under Bankruptcy Rule 7012 and Motion to Abstain* filed in Adv. No. 07-1025-FRM (Docket No. 4) ¶¶6-7. According to Spann:

> "This bankruptcy proceeding is nothing but a thinly veiled attempt for Rambo to forum shop. ...Spann seeks a swift resolution that the Complaint be dismissed on the merits. In the alternative, Spann requests that this court abstain...."

*Id.* at ¶¶6-7. This Court ultimately dismissed the Chapter 11 and the related adversary proceeding finding that the Chapter 11 filing had not been authorized by the partners as required by the

Partnership Agreement.

Spann's arguments in the pending bankruptcy case appear inconsistent with his prior contentions. He now asserts that Rambo Imaging should be in bankruptcy because:

> Petitioner [Spann] asserts it is in the best interests of the partnership, its creditors and it partners [sic], for this Court to supervise an orderly accounting, liquidation and administration of the partnership, including the recovery of any avoidable transfers and the determination of the validity of the claims against the partnership, all of which would serve to preserve and/or increase the size of the distributable estate. Accordingly, Petitioner believes there is a substantial risk that Petitioner's ability to protect his interest may be impaired without his intervention and the granting of relief.

*Spann's Response to Rambo's Objection to the Amended Involuntary Petition* in Cause No. 07-11190-FRM (Docket No. 85) at ¶8.

2) Spann's Standing

In his *Motion under Bankruptcy Rule 7012 and Motion to Abstain* in Adversary Proceeding 07-1025 related to Rambo's previous Chapter 11 case, Spann alleged in ¶2 that he was a non-managing partner of Rambo and then in ¶59 that he was a limited partner of Rambo. In addition in the state court case, *PNB Financial Bank v. Spann, et al*, Spann stated under oath in his deposition: "Nor am I a general partner in any entity such as this [Rambo Imaging]." *Transcript of the Oral Deposition of Scott Weaver Spann, M.D. taken December 5, 2003* in *PNB Financial Bank v. Spann, et al.* at page 42 on lines 16-17. After the state court tried the case, the court entered proposed findings of fact. Among the judicial findings, the state court entered the following:

> "Defendants [Spann, et al] are limited partners in the Partnership [Rambo Imaging L.L.P.]. Lewis Nichols, John Constantine and David Rambo manage the Partnership."

*Defendants' Findings of Fact and Conclusions of Law*-Findings of Fact--¶1.

The Partnership Agreement executed by Spann indicates it is a Texas partnership agreement executed under the Texas Revised Partnership Act ("TRPA") as opposed to the Texas Revised Limited Partnership Act. As such, it is a general partnership. General partners of a general partnership formed and organized under TRPA own their interests in the partnership and share rights in the management of the partnership according to the terms of their partnership agreement, or if there is no written agreement, then in accordance with the provisions of TRPA. The Rambo Partnership Agreement references the TRPA and the term "Act" in the agreement is defined in the agreement as "the Texas Revised Partnership Act."

Under the written Partnership Agreement, Rambo Imaging is managed by certain managing partners of which Spann is not one. The Partnership Agreement provides:

5.01 <u>Management by the Managing Partners</u>

A.    Powers of Managing Partners. Except for situations in which Partner approval is required by this Agreement, or by nonwaivable provisions of applicable law, and subject to the provisions of Section 5.02;

    1. The Partnership will be managed by one or more Managing Partners; and

    2. The Managing Partners may make decisions and take actions for the Partnership by a majority vote as follows:

    a. Entering into and performing contracts, agreements, and other undertakings binding the Partnership that may be necessary to further Partnership's purpose, provided such contract, agreement and other undertaking is not terminable at will and involves an anticipated expenditure of over $20,000;

    b. Opening and maintaining bank and investment accounts and arrangements, drawing checks and other orders for payment of money and designating individuals with authority to sign or give instructions with respect to those accounts and arrangements;

    c. Maintaining the Partnership's assets in good order.

    d. Collecting sums due the Partnership;

    e. To the extent that Partnership funds are available, paying the Partnerships's debts and obligations;

 f. Acquiring, utilizing for Partnership purposes, and disposing of any Partnership asset, provided such asset does not have a cost or fair market value in excess of $50,000;

 g. Borrowing money or otherwise committing the Partnership's credit for Partnership activities and voluntary prepayments or debt extensions including borrowing from Partners, provided such borrowing does not exceed $20,000;

 h. Obtaining insurance for the Partnership; and

 i. Executing, amending or terminating any agreements with third party payors.

Pursuant to the Partnership Agreement, there are certain situations under the agreement, however, in which partner approval is required:

B. Restrictions on Managing Partners' Power. The Managing Partners may not cause the Partnership to do any of the following without obtaining the approval of the holders of at least two-thirds (2/3rds) of all Partnership Units, unless otherwise required by the Act:

 1. Sell, lease exchange or otherwise dispose of all or substantially all the Partnership's assets (with or without good will), other than in the regular course of the Partnership's business;

 2. Be a party to a merger, exchange or acquisition;

 3. Amend or restate the Agreement; or

 4. Require any Additional Capital Contributions by Partners.

C. Powers Reserved to Partners. All powers not specifically delegated to the Managing Partners by this Section are reserved to the Partners unless delegated to the Managing Partners by action of the holders of a majority of the Partnership Units. In addition to any Managing Partners' approval that may be required by this Agreement or by nonwaivable provisions of applicable law, the following functions must be approved by the holders of the majority of all Partnership Units, unless otherwise required by the Act:

 1. The acquisition, pledging, encumbrance or disposition of any interest in real property;

 2. The assumption or guarantee of any indebtedness related to the borrowing of funds in excess of $20,000;

 3. The pledge or hypothecation of any assets of the Partnership (other than to secure a purchase money security interest in such asset);

 4. The requirement of the personal guarantee of any Partner of any indebtedness of the Partnership related to the borrowing of funds by the Partnership;

 5. Admission of a new Partner;

6

       6. The selection, removal and change of authority and responsibility of lawyers, accountants and other advisers and consultants;

       7. The determination of distributions of Partnership cash and other property;

       8. The hiring or termination of the Administrator or Chief Executive Officer and staff of the Partnership; or entering into a written Management Agreement;

       9. Distributions pursuant to Section 4.02.

D.    Additional Restrictions on Powers of Managing Partners. During the time period in which J.D.R. Managment Company, an Oklahoma corportion ("JDR") is serving as the Managing Partner, all decisions and actions relating to the Management Service Agreement between JDR and the Partnership shall be made by the Partners as a whole excluding JDR.

Even though Rambo Imaging L.L.P. was formed as a general partnership, it is also a registered limited liability partnership. In Texas both general partnerships and limited partnerships can take advantage of the liability protections afforded by the Texas Business Organizations Code which permits both types of partnerships to register as "limited liability partnerships." *See* TBOC §152.801 et. seq. which sets forth strict requirements relating to financial responsibility and insurance that the registered limited liability partnership must maintain to retain protection under the statute.

Rambo claims that Spann is not a general partner because the state court in *PNB Financial Bank v. Spann et. al.* made a factual determination that he is a limited partner. Rambo further claims that if such finding is not sufficient to preclude Spann's assertion that he is a general partner his deposition testimony in that state court proceeding as well as his statements made and his positions taken in Rambo's prior bankruptcy estop him from now claiming that he is a general partner for purposes of §303 of the Bankruptcy Code.

Issues Presented

1. Is Dr. Scott W. Spann M.D. a general partner of Rambo Imaging L.L.P. such that he has

standing to be a petitioner in this involuntary case?

    2. If Dr. Scott W. Spann M.D. is a general partner is he estopped from claiming such?

## Conclusions of Law

Subsection (b)(3) of §303 of the Bankruptcy Code provides than an involuntary case can be filed by (1) fewer than all the general partners or (2) if all the general partners are in bankruptcy, a general partner, trustee of the general partner or holder of a claim against the partnership. This provision is particularly useful when there is a disagreement among the general partners. A general partner may want to file a petition when that partner believes the other partners have committed acts detrimental to the partnership and its creditors, particularly if those acts could result in personal liability of the petitioning partner. The petitioning partner would want the filing so that there could be an orderly liquidation and administration of the partnership.

The statute allows such action only by a general partner. The determination of whether a person is a general partner is made by interpreting the underlying agreements of the parties as governed by state law. *In re Pallet Reefer Co.,* 233 B.R. 687 (Bankr. E.D. La. 1999).

The Rambo Imaging L.L.P. Partnership Agreement indicates that it is a general partnership. As such, it would appear that all of the partners to the agreement are general partners regardless of the fact that there are designated managing partners to manage the day to day affairs of the partnership. This is further confirmed when one looks at the rights reserved to all the partners in connection with their full authority to make certain management decisions.

However, although Rambo Imaging L.L.P. is established under the Texas Revised General Partnership Act, it has also elected to be a registered limited liability partnership.

Limited liability partnerships usually afford partners some degree of limited liability

protection. Generally, these partnerships are formed by attorneys, accountants or other professionals. The nature and extent of the limitation on liability of partners varies from state to state, but generally includes protection from liability for the professional negligence of the other partners. In some states, partners in an LLP enjoy full vicarious liability protection from partnership debts similar to the protection given to shareholders of a corporation.

In 1991, Texas adopted the first Limited Liability Partnership law allowing partners to shield themselves from tort, but not contract, liability. Tex. Rev. Civ. Stat. Ann., art. 6132b, §15 (Vernon 1992). This came from a cry for protection from personal liability claims from unincorporated law and accounting firms. Robert W. Hamilton, <u>Registered Limited Liability Partnerships: Present at the Birth (Nearly)</u>, 66 Colo. L. Rev. 1065 (1995). In 1997, the statute was amended to shield partners in Texas LLPs from contract liability as well. Tex. Rev. Civ. Stat. Ann. art. 6132b-3.08 (Vernon 1998). The same full shield was carried over into subsequent amendments of the statute, the most recent being the Texas Business Organizations Code. §152.801 et. seq. (eff. Jan. 1, 2006).

Section 152.801 Liability of a Partner provides:

(a) Except as provided by subsection (b), a partner in a limited liability partnership is not personally liable, directly or indirectly, by contribution, indemnity or otherwise, for a debt or obligation of the partnership incurred while the partnership is a limited liability partnership.

(b) A partner in a limited liability partnership is not personally liable for a debt or obligation of the partnership arising from an error, omission, negligence, incompetence, or malfeasance committed by another partner or representative of the partnership while the partnership is a limited liability partnership and in the course of the partnership business unless the first partner:

> (1) was supervising or directing the other partner or representative when the error, omission, negligence, incompetence, or malfeasance was committed by the other partner or representative;
>
> (2) was directly involved in the specific activity in which the error, omission, negligence, incompetence, or malfeasance was committed by the

>    other partner or representative; or
>
>    (3) had notice or knowledge of the error, omission, negligence, incompetence, or malfeasance by the other partner or representative at the time of the occurrence and then failed to take reasonable action to prevent or cure the error, omission, negligence, incompetence, or malfeasance.

This Court was unable to find any case law addressing the ability of a limited liability partner's authority to file an involuntary petition. However, one treatise, Collier on Bankruptcy, discusses the issue that arises if fewer than all general partners in an LLP file an involuntary petition under §303(b)(3). It states that in those states that grant partners full limited liability protection, similar to the liability limitations afforded shareholders of a corporation, the partnership falls within the Code's definition of "corporation," Collier on Bankruptcy ¶303.07[5], 15th Ed. Revised.(2008) "Corporation" is defined in the Bankruptcy Code to include a "partnership association organized under a law that makes only the capital subscribed responsible for the debts for such association." 11 U.S.C. §101(9)(A)(ii). By defining "corporation" to include such partnerships, Congress apparently intended that such limited liability partnerships would be treated as corporations and not as partnerships under the Code. Moreover, in view of §303(b)(3)'s purpose, which is to protect general partners who are exposed to personal liability for partnership obligations by enabling them to preserve the value of partnership assets through bankruptcy, it makes sense that §303(b)(3) should not be available to limited liability partners who are not personally liable for partnership debts. In this context, there is no reason to treat partners in a limited liability partnership differently from shareholders in a corporation.[1]

---

[1] Under §723(a), a trustee shall have a claim against general partners "to the extent that under applicable nonbankrutpcy law such general partner is personally liable for such deficiency." The legislative history of this statute indicates it was amended to clarify that a partner of a registered LLP would only be liable to the extent the partner would be personally liable for a deficiency according to the applicable LLP statute.

For these reasons, Collier on Bankruptcy takes the position that if a limited liability partnership is registered in a state that grants its general partners the same type of limited liability afforded to shareholders of a corporation, rather than merely protecting them from vicarious liability for negligence or other acts of wrongdoing by another partner, §303(b)(3) should not be applicable. Collier on Bankruptcy, ¶303.07[5], 15th Ed. Revised (2008).

Spann, although a general partner, has standing like that of a shareholder of a corporation. As such, he is ineligible to be a petitioning partner under 11 U.S.C. §303(b)(3).

Rambo next argues that even if Spann is a general partner, the *PNB* litigation should have some type of preclusive effect on petitioner in this case as well as various statements and positions taken with respect to Rambo's previous bankruptcy case. In *PNB Financial Bank v. Scott Weaver Spann, et al,* in the District Court of Travis County, Texas, 53rd Judicial District, No. GN302233 the plaintiff, PNB, sought to subrogate to the rights of Frost Bank and Guaranty Bank in order to recover against the defendants, including Spann's personal guaranty of loans made to Rambo by Frost and Guaranty, after PNB had paid those loans in full. PNB alleged numerous theories of liability but did not seek to hold the defendants liable on the theory that they were general partners, as the liability of a general partner in a limited liability partnership for such types of debts is limited by the Texas Revised Partnership Act and the TBOC. Spann and the other defendant partners filed a declaratory judgment counterclaim against PNB, seeking declaratory judgment that their guarantees to Frost Bank and Guaranty Bank had been extinguished upon PNB's payment and that procedures to obtain authority under the Partnership Agreement to obtain the loan from PNB and to require the partners to sign personal guarantees had not been followed. In its Findings of Fact and Conclusions of Law in the record, the state court found that the managing partner did not obtain the authority to obtain

the loan from PNB because it did not follow the requirements of the Partnership Agreement and obtain the consent of the requisite majority of the partners. The partners, according to the ruling, had no obligation to PNB to execute personal guarantees of the PNB loan.

Rambo claims that the state court's reference to the defendant partners as "limited partners" in its Findings of Fact and Conclusions Of Law along with Spann's deposition testimony that he is not a general partner somehow has a preclusive effect on Spann's ability to now claim he is a general partner and file this involuntary petition against Rambo.

We agree with Spann that res judicata or claim preclusion prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related claims and causes of action, that with the use of diligence, should have been litigated in the prior suit. *Barr v. Resolution Trust Corp.,* 837 SW2d 627, 628 (Tex. 1992). Res judicata, claim preclusion prevents splitting a cause of action. *Id.* Collateral estoppel, or issue preclusion prevents relitigation of particular issues already resolved in a prior suit. *Id.*

Under collateral estoppel, it is Rambo's burden to establish each and every element of the theory. *See John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst,* 90 S.W.3rd 268, 288 (Tex. 2002). With respect to collateral estoppel, Rambo must establish that "the facts sought to be litigated in the second action (i.e. this involuntary case) were fully and fairly litigated in the first action (i.e. state suit); and 2) those facts were essential to the judgment in the first action; and 3) the parties (i.e. Spann and Rambo) were cast as adversaries in the first action. *Id.* Rambo cannot satisfy any of the three elements of collateral estoppel. The issue as to whether petitioner status in the Rambo partnership was as a general partner or a limited partner was never an issue in the state court suit. It is also clear that petitioner's status in the Rambo partnership, whether as a general partner or a

12

limited partner, was not a fact issue essential to the judgment or the findings of facts and conclusions of law in the state suit. Further, Rambo was not cast as an adversary party in the state suit as it was not a party to the litigation at all. Collateral estoppel does not apply in this case.

If anything, this is a case of judicial estoppel which the Court pointed out on the record during the hearing. The doctrine of judicial estoppel is applied by courts to prohibit parties from deliberately changing positions according to the exigencies of the moment in order to protect the integrity of the judicial process. It is an equitable doctrine invoked by a court within its sound discretion. *Id.* The Court of Appeals for the Fifth Circuit employs several factors in balancing the equities in determining whether to apply the doctrine: 1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position; 3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *In re ARK-LA-TEX Timber Co., Inc.,* 482 F.3d 319 (5th Cir. 2007)(citing *New Hampshire v. Maine,* 532 U.S. 742, 750, 121 S.Ct. 1808 (2001)). The Supreme Court in *New Hampshire* observed in its review of federal appellate court decisions applying the doctrine that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principal," and "[i]n enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *Id.* at 750-751. Further, the Supreme Court opined that it might be appropriate "to resist application of judicial estoppel 'when a party's prior position was based on inadvertence or mistake.'" *Id.* at 753 (citing *John s. Clark Co. v. Faggert & Frieden, P.C.,* 65 F.3d 26, 29 (4th Cir. 1995 (explaining that the vice that judicial estoppel is designed to prevent is the "cold manipulation"

13

of the courts to the detriment of the public).

Spann's claim in this matter that he is a general partner of Rambo is "clearly inconsistent" with the material claims he put forth in the state court case that he was a limited partner of Rambo. He has obviously taken these positions because he thought it was beneficial to his interests to do so.

Additionally, in the prior bankruptcy case, Spann took the position that he was a limited partner apparently because he perceived that taking such a position was to his benefit in that case as well. He now takes the clearly inconsistent position that he is a general partner. Spann's view of exactly what type of partner he is in Rambo seems to change as his perceived interest changes. This is precisely the situation judicial estoppel is designed to address. As such, even if Spann is a general partner of Rambo under partnership law, he is judicially estopped from claiming so.

No other issues need be addressed. The Amended Petition should be dismissed.

###